**STATE of Missouri, Respondent,**

v.

**Charles ALLEN, Appellant.**

**No. 48276.**

Supreme Court of Missouri,

Division No. 1.

Feb. 13, 1961.

**64**

Henry D. Espy, St. Louis, for appellant.

John M. Dalton, Atty. Gen., W. Don Kennedy, Spec. Asst. Atty. Gen., for respondent.

WESTHUES, Presiding Judge.

Charles Allen, the defendant in this case, and Lawrence Ben Mobley were jointly charged with an assault with intent to kill with malice aforethought one Otis Edwards. The offense was alleged to have been committed in the City of St. Louis, Missouri, on the night of September 17, 1959. The weapon used in the assault was a shotgun. A severance was granted and a trial resulted in a verdict finding Allen guilty as charged. By the judgment of the court, Allen was sentenced to serve twenty-five years in the State Penitentiary. An appeal was taken to this court. Defendant has not favored us with a brief. His motion for new trial contains nineteen assignments of error. We shall disregard those that fail to preserve any point for review and treat those that pertain to the same subject matter together. An alibi was relied on as a defense. We note here that defendant was represented in the trial of this case by Henry Espy who was appointed by the court. We note further that Mr. Espy performed his task with ability and vigor.

The State's evidence justifies the following statement of facts: The victim of the shooting, Otis Edwards, and the defendant Charles Allen were seen together on September 17 at various times and places. They were seen at the Atlas Hotel and Restaurant at ten o'clock that night. Edwards testified that they spent some time there drinking coffee; that Allen told Edwards that he was waiting for a third person to join them. Allen made several telephone calls. Later, Mobley, an acquaintance of Edwards, came in a car. Allen left, saying he would be back soon. When Allen returned, Mobley and Allen left the restaurant together and drove away in Mobley's car. Edwards was told to wait for them. Shortly thereafter, these two returned and asked Edwards to join them; they then drove to Delmar and Whittier Streets where Allen got out of the car. Mobley and Edwards drove to the 4200

block on Washington and parked. Mobley left the car and Edwards for a few minutes. When he returned, he informed Edwards that Allen was waiting for them. They walked north through a "gangway" between two houses. It was then near midnight. While walking through this gangway, they came face to face with Allen who pointed a shotgun at Edwards. The distance between the men was not more than 10 feet. Edwards said he stepped behind a chimney and asked Allen what was happening. Allen then said something to Mobley; whereupon Mobley pulled Edwards into the gangway and Allen shot Edwards in the face. Edwards was rendered unconscious for a short time. He then went across the street and called for help. Police arrived soon thereafter and took Edwards to a hospital where he spent five months. He had not fully recovered at the time of trial. Edwards' injuries were of a very serious nature. His tongue was partially shot away, a number of teeth were missing, the bones of his face and jaw were shattered, and two of his fingers were severed and were partially imbedded in his sinuses.

It does not appear that Allen and Edwards had any ill feeling toward each other. It did appear that Edwards was then under a charge of having had possession of narcotics; further, that he was a government witness in a narcotics case pending against Sylvester Perrin. Allen was later arrested in San Francisco, California, by a Federal Government narcotics agent named Niblo. Mr. Niblo stated that he asked Allen if he had shot Edwards because he was a government witness. He testified that Allen's answer was, " 'I used to peddle dope myself; I know how the gangs operate.' "; that Allen also added, " 'I shot him with a shotgun because he was trying to stick me up.' " Defendant refused to tell Niblo who had been with him at the time of the shooting.

Defendant did not testify in his own behalf. His witnesses gave evidence in support of his contention that he was with Doris Seay and Vivian Henderson at a nightclub during the evening of September 17 up to and including the time the shooting occurred. In rebuttal, the State introduced evidence that Allen, while in jail, had pointed to Emma Jean Bradley and had stated that he was with Emma Jean on the night the shooting occurred. Emma Jean had testified for the State. Her evidence was that she had seen Allen and Edwards at the Atlas Hotel on the night of September 17.

We shall now dispose of the points preserved for review. Defendant says that he did not have a preliminary hearing on the charge made in the information. The record shows that a grand jury indicted the defendant on the charge of which he was convicted. The circuit attorney filed an information in lieu of the indictment. In this information, it was alleged that Allen had had two prior convictions. The attorney for the defendant asked for a continuance for the purpose of investigating the question of prior convictions. The State's attorney then stated that the allegations of prior convictions would be abandoned. That was done. Then the defendant's attorney stated that no preliminary hearing had been had to support the filing of an information. The court overruled the objection. Supreme Court Rule 24.02, V.A.M.R., permits the filing of an information in lieu of an indictment. In S.Ct. Rule 23.02, it is provided that "No preliminary examination shall be required where an information has been substituted for an indictment." S.Ct. Rule 24.15 provides that in case an information is substituted for an indictment, such fact shall not cause a delay of a trial unless the defendant shall satisfy the court that additional time is necessary to prepare a defense. It is apparent that defendant's points are without merit. The allegations of prior convictions were abandoned and under the law no preliminary hearing is necessary in a case where an information is substituted for an indictment.

Defendant complains because the trial court did not instruct on common

assault. The statement of facts, as supported by the evidence, showed beyond any question that there was no justification for the submission of the question of common assault. 6 C.J.S. Assault and Battery § 128d, pp. 1005–1007; State v. Chandler, Mo., 314 S.W.2d 897, loc. cit. 901(7); State v. Cox, Mo., 333 S.W.2d 46, loc. cit. 50(5).

Two assignments of error concern the evidence given by witness Niblo who arrested the defendant in California. It is urged that Niblo's statement that Allen had told him that he (Allen) had sold dope and knew how gangsters operated was deliberately made for the purpose of prejudicing the jury; further, that the alleged statement had no connection with the charge against Allen. At the trial, defendant's counsel asked the court to declare a mistrial. This the court refused. The record shows that at the close of defendant's evidence defense counsel asked the court to instruct the jury to disregard the evidence given by Niblo concerning statements made by Allen. The court then orally instructed the jury as follows:

"Members of the jury, yesterday afternoon when Mr. Niblo, the Government Agent, was on the stand testifying and we had a kind of a hearing up here out of the hearing of the jury I sustained an objection to his testimony which was to the effect that the defendant had told him 'I used to peddle dope myself and I know how the gangs operate.' I sustained that objection and I want to tell you now to disregard that statement completely and not to consider it when you are deliberating on this case down in your jury room."

■■ Declaring a mistrial in such circumstances rests largely within the discretion of the trial court. State v. Sarkis, Mo., 313 S.W.2d 723, loc. cit. 725(2,3); 23 C.J.S. Criminal Law § 1382, p. 1060. Furthermore, defense counsel vigorously cross-examined Edwards and attempted to compel him to admit that the witness was an informer employed by the government. Edwards admitted that he was then under a charge of possession of narcotics; further, that he had been a witness for the government in a number of narcotics cases. When the State objected to this line of cross-examination, the defense counsel stated, "But this whole thing is tied up in the dope situation, your Honor, and I know that I have a right to go into that and show other people could have shot him, that they had made assaults on him before, I think that is a material element in this case." We rule that the trial court did not err in refusing to declare a mistrial.

■ Defendant says that the trial court unduly limited his right to cross-examine witness Emma Jean Bradley as to her last place of employment. Emma Jean testified that she had seen Edwards and Allen at the Atlas Hotel on the night of September 17. She was cross-examined at length. It was shown that she was a witness in a criminal case involving narcotics. It was also shown that she had been convicted on a charge of larceny. She was in jail at the time of Allen's trial. She was asked where she had worked. Her reply was "I don't work." The court sustained the State's objection to further cross-examination on this subject matter. Defense counsel stated the cross-examination was for the purpose of impeaching the witness. A trial court may, within reason, limit such cross-examination. 98 C.J.S. Witnesses § 515j, p. 440. The trial court, in this case, permitted a lengthy cross-examination on various subjects,—a portion of which is set out:

"Q. I believe you testified that you were charged with conspiracy, something about narcotics, with Herbert Peyton. When was that? A. May the 29th, 1959.

"Q. May the 29th, 1959. Had you been convicted of a charge before that? A. No, I wasn't convicted of that one.

"Q. Have you been convicted of any charge before that one? A. Yes, in Clayton, for felony.

"Q. When was that? A. October the 28th, 1959."

The record discloses that the trial court permitted a liberal cross-examination. Defendant's point is overruled.

■ Defendant stated in his motion for new trial that the trial court erred in permitting the State to introduce evidence in rebuttal. Defendant's witnesses Vivian Henderson and Doris Seay testified that Allen had been with them on the night of the shooting. To rebut this evidence, the State was permitted to show that while in jail Allen stated that he was not responsible for the shooting and pointing to Emma Jean Bradley, he said, "I was with the girl right there." Allen vouched for witnesses Henderson and Seay by calling them to testify. The evidence of the statement made by Allen contradicted the evidence of the two witnesses as to his whereabouts on the night of the shooting and therefore was admissible in rebuttal. 23 C.J.S. Criminal Law § 1053, p. 461; Commonwealth v. Ricci, 161 Pa.Super. 193, 54 A.2d 51, loc. cit. 52(4); People v. Thomas, 7 Ill.2d 278, 131 N.E.2d 35, loc. cit. 37 (1-3).

Defendant further contends that the verdict assessing a punishment of twenty-five years was so excessive as to show prejudice on the part of the jury. In other assignments, complaint is made that the court erred in admitting evidence of the injuries Edwards sustained and in permitting the jury to see Edwards. Defendant claims that such evidence and seeing Edwards prejudiced him.

■ Edwards was the principal witness for the State. He was also the victim of the shooting. The State was not required to cover Edwards' mutilated face which was the result of the shooting. Neither was it error for the State to introduce evidence of the injuries which Edwards sustained. The rule is stated in 6 C.J.S. Assault and Battery § 123, p. 989, as follows: "For the purpose of showing the nature and character of the injuries sustained it is competent to prove the physical condition of the person assailed at the time of, or shortly after, the commission of the assault with which accused stands charged, and also the duration of the period of recovery. Such evidence may be given either by an attending physician, or by the person assaulted, or by any one having knowledge of the facts."

■ We are of the opinion that the facts and circumstances as shown by the evidence amply refute defendant's argument that the punishment assessed is excessive. Further comment on this subject is unnecessary.

■ In seven separate assignments, defendant complained that the argument to the jury by the attorney for the State was prejudicial to the defendant's rights. This court en banc, in the case of State v. Laster, 365 Mo. 1076, 293 S.W.2d 300, loc. cit. 305-307(4) (5, 6) (7, 8) (9), considered at length rules governing arguments of prosecuting attorneys. This subject matter is also treated in 23 C.J.S. Criminal Law § 1107, p. 583. In reading the argument made in the case before us, we failed to find wherein the State's attorney transgressed any of the applicable rules. Much of the argument complained of in the motion for new trial was not objected to at the time. But be that as it may, we shall refer to portions to illustrate the general trend of the argument. Note what the State's attorney said:

"Mr. Cahill: You heard the evidence, and I say that the punishment should be as severe as it possibly can be, not only to stop this man, that is not the important thing, but to stop other men who are inclined to do the same thing if you are light on this man. This is the most vicious type of crime you can commit, this is something you think about and calculate—"

At this point, the argument was interrupted by an objection. In other portions

of the argument, the jury's attention was directed to the fact that Edwards had half of his face "shot off" and "we have to put a stop to it." The jury was urged to assess a punishment of at least twenty years. We note in the record that the trial court sustained some of the objections made by the defense counsel. It is our opinion that the trial court kept the State's attorney well within the limits.

We note that the verdict, when it was first returned to the court, read: "We, the jury in the above entitled cause, find the defendant guilty of Assault with Intent to Kill with Malice aforethought as charged in the Substitute Information and assess his punishment at 25 years." The record shows the following to have occurred:

"The Court: * * * The place of confinement should be put in there. Will the foreman step up. You have twenty-five years, and the word 'penitentiary' should be written in there.

"Mr. Flaherty: Penitentiary?

"The Court: Just penitentiary.

"I assume by your verdict that it was the intention of this jury that this twenty-five years should be spent in the Missouri State Penitentiary.

"(By a number of jurors, simultaneously) That is correct. That is correct."

After a motion for new trial was filed and overruled the court entered a judgment to the effect that the defendant should serve twenty-five years' imprisonment in the State Penitentiary. The verdict of the jury was not fatally defective.

We have examined matters of record which is required by our Rule 28.02 and find no prejudicial error therein.

The judgment is affirmed.

All concur.