THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN D. KNIPPENBERG, Defendant-Appellant.

Fifth District   No. 78-75

Opinion filed March 15, 1979.

Franz K. Fleischli, III, of Springfield, for appellant.

Brenda Sweeney, State's Attorney, of Taylorville (Raymond F. Buckley, Jr., and Stephen J. Maassen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Following a jury trial in the Circuit Court of Christian County, defendant John Knippenberg was convicted of murder and sentenced to a term of 30 to 60 years imprisonment. Defendant appeals from his conviction alleging that the trial court erred in denying his motion for a change of venue and change of judge; that it abused its discretion in refusing to sequester the jury; that defendant was denied a fair trial as a result of prejudicial comments made by an excused juror in the presence of two panel members, and as a result of unauthorized communications between jurors and a third party; that the delay between defendant's first and second trial deprived him of the right to a speedy trial; and that it was improper for the court to admit sworn testimony of unavailable witnesses given at an earlier trial of defendant.

Defendant and two co-defendants, James Vaughn and John Burton, were convicted in separate trials of the murder of a jeweler during an attempted armed robbery. We affirmed defendant's conviction (33 Ill. App. 3d 971, 338 N.E.2d 885), but the supreme court reversed and remanded the cause for a new trial (66 Ill. 2d 276, 362 N.E.2d 681). The

facts of the occurrence have been described in these two opinions and in *People v. Vaughn*, 25 Ill. App. 3d 1016, 324 N.E.2d 17 (5th Dist. 1975), and need not be repeated here.

Prior to the new trial, on June 23, 1977, defendant filed a motion to change the place of trial pursuant to section 114—6 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 114—6). In his motion and supporting affidavit, defendant alleged that he could not receive a fair and impartial trial in Christian County by reason of prejudice in the community. Specifically, he cited the excessive publicity in the media concerning his prior conviction and reversal; the popularity of the deceased who had operated a jewelry store for many years in Taylorville, the county seat; and the prejudice against defendant as an "outsider" and convicted felon. At a hearing on this and other motions, Ann Young of Creative Marketing Services testified that she had conducted a poll of 139 individuals to determine the attitudes of the voters of Christian County towards defendant. The results of the poll indicated that a majority of these individuals believed that defendant was guilty; that a retrial was unnecessary; and that the county should not bear the cost of a new trial. It was Ms. Young's opinion that defendant would be denied a fair and impartial trial by a jury in Christian County. On July 6, 1977, the motion for a change of place of trial was denied.

Thereafter on October 13, 1977, defendant filed a motion for change of venue and for change of judge outside the circuit asserting similar allegations as stated in his prior motion. After a hearing, the motion was denied. Defendant then filed a motion to sequester the jury alleging once again the probability of prejudice against defendant in the community. The trial court denied the motion.

The record reveals that the trial court conducted an extensive and thorough examination of the potential jurors at the voir dire. Of the 12 jurors selected, 10 indicated that they had previously heard of the case. All stated, however, that they knew none of its details; that it made no lasting impression; and that they could be fair and impartial.

During the course of the jury selection, one prospective venireman, in response to the court's questioning his knowledge of the case, stated: "All I remember was there was a trial and essentially that's what I remember about it." The juror was excused but two jurors who later served on the panel heard these comments. Defense counsel, however, tendered both women as jurors without making an objection. Later, after the jury selection process had been completed, defense counsel requested the removal of these jurors from the panel. The court noted that there were multiple defendants in the case and that it was not clear to which trial the excused juror referred.

During the instruction conference, two jurors independently notified

the court that their wives had received a telephone call from an unidentified woman urging them to persuade their husbands to find defendant guilty. In denying defendant's motion for mistrial, the court stated that the calls could be equally detrimental to the prosecution.

Defendant first assigns as error the trial court's denial of his motion to change the place of trial and change of judge outside the circuit. He argues that the existence of local prejudice as indicated in the survey prevented him from receiving a fair and impartial trial in the county. As additional support for his position, defendant places great emphasis on the State's failure to introduce any evidence or affidavits refuting the charge of prejudice.

We first note that we are not aware of the existence of any authority in the State of Illinois which permits a movant to request a change of judge outside a particular judicial circuit. Had defendant sought a substitution of the judge he could have followed the procedures set forth in section 114—5 of the Code of Criminal Procedure of 1963 (see Ill. Rev. Stat. 1977, ch. 38, par. 114—5). As defendant was apparently only requesting a change in the place of trial as a result of local prejudice in the community, we address this issue.

■■ The general rule in this State is that a defendant is entitled to a change in venue when it appears that there are reasonable grounds to believe that prejudice against the defendant actually exists and that by reason of this prejudice there is a reasonable apprehension that defendant cannot receive a fair and impartial trial. (*People v. Gendron*, 41 Ill. 2d 351, 243 N.E.2d 208 (1968), *cert. denied*, 396 U.S. 889, 24 L. Ed. 2d 164, 90 S. Ct. 179 (1969); *People v. Campbell*, 28 Ill. App. 3d 480, 328 N.E.2d 608 (5th Dist. 1975).) The decision whether to grant a change in venue is discretionary with the trial court, and absent an abuse of that discretion, the decision will not be reversed. (*People v. Campbell*.) After a careful search of the record, we are convinced that the trial court did not abuse its discretion.

That defendant can point to potentially harmful publicity within a community as indicated by the survey does not, standing alone, establish proof of community prejudice to warrant a change in the place of trial. (*People v. Gendron*.) In any criminal case attracting public attention in a small community there always exists the possibility of local prejudice. But to hold that such a possibility warrants an automatic change in venue would create an unreasonable standard.

■■ The most valuable tool in determining local attitudes towards a defendant is found in the examination of prospective jurors in the voir dire. (*People v. Campbell*; *People v. Myers*, 20 Ill. App. 3d 83, 312 N.E.2d 741 (4th Dist. 1974).) The jurors need not be totally ignorant of the facts and issues of a particular case. (*Irvin v. Dowd*, 366 U.S. 717, 6 L. Ed. 2d

751, 81 S. Ct. 1639 (1961); *People v. Williams*, 40 Ill. 2d 522, 240 N.E.2d 645 (1968).) It is sufficient if the jurors can set aside their impressions of the case and render a fair verdict based upon the evidence at trial. (*Irvin v. Dowd*; *People v. Williams*.) In the instant case, we find every indication that the jurors selected to the panel were fair and impartial. The jurors were carefully interrogated by the court and respective counsels to determine whether there existed any possible prejudice against defendant. While 10 of the 12 jurors had heard of the case, none knew of its details. Furthermore, the jurors indicated that the case had made no lasting impression on them and concluded that they could be fair and impartial.

■■ It is also significant in determining the presence of community prejudice that the second trial took place more than five years after the offense occurred and nearly seven months following the newspaper articles concerning the reversal of defendant's conviction. It is well established that the lapse of time between the alleged publicity and the actual trial may be considered sufficient to dissipate any feeling of prejudice in the community. (*People v. Black*, 52 Ill. 2d 544, 288 N.E.2d 376 (1972).) It is of additional significance that these newspaper reports were simply an account of the events of defendant's conviction and subsequent reversal and were in no manner inflammatory.

Defendant cannot have cause to complain that the trial court committed error in denying his motion for change in venue when, in fact, he received a fair and impartial jury trial. (See *People v. Black*.) A review of the record reveals no indication that any member of the jury was prejudiced against defendant. In fact, the two separate incidents, in which jurors reported to the court that they had received a phone call urging them to find defendant guilty, belie any notion that defendant did not receive a fair trial.

■ Defendant next assigns as error the failure of the trial court to sequester the jury. Subsection (m) of section 115—4 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 115—4) governing this procedure provides:

> "(m) In the trial of a capital or other offense, any juror * * * shall be permitted to separate from other such jurors * * * except that no separation shall be permitted in any trial after the court, upon motion by the defendant or the State or upon its own motion, finds a probability that prejudice to the defendant or to the State will result from such separation."

The decision to sequester the jury is within the discretion of the trial court. (*People v. Bolton*, 35 Ill. App. 3d 965, 343 N.E.2d 190 (3d Dist. 1976).) If the jury is adequately admonished by the court and there is no demonstration of actual prejudice by defendant, a refusal to sequester the

jury is not reversible error. (*People v. Yonder*, 44 Ill. 2d 376, 256 N.E.2d 321 (1969), *cert. denied*, 397 U.S. 975, 25 L. Ed. 2d 270, 90 S. Ct. 1094 (1970); *People v. Vaughn*, 25 Ill. App. 3d 1016, 324 N.E.2d 17 (5th Dist. 1975).) In the present case, the trial court repeatedly warned the jurors not to discuss the case among themselves or with anyone else, not to read newspaper accounts or listen to radio or television reports of the trial, and that they were to decide the case according to the evidence presented in the courtroom. Defendant's introduction of the survey of voters in the county demonstrated only the possibility and not the actual presence of prejudice. In light of the lapse of time between the commission of the crime and the time of the second trial, and the statements and actions of the jurors indicating that the jurors were fair and impartial, we find no evidence of prejudice against defendant. As stated in *People v. Yonder*:

> "Our basic consideration here is not necessarily the correctness of the trial court's rulings on the defendants' motions for change of venue and sequestration or the amount of publicity involved, but whether upon the record as a whole the defendants received a trial before a fair and impartial jury * * *." (44 Ill. 2d 376, 388, 256 N.E.2d 321, 328.)

In our careful reading of the record, we believe it is clear that defendant received such a trial.

■■ ■ Defendant next contends that the two jurors, who heard the comments made by a prospective juror concerning the existence of a first trial, should have been excused from the panel. It is curious that defendant now challenges their selection when he had originally found these jurors to be acceptable. We believe defendant's failure to challenge for cause or exercise a peremptory challenge waived any objections to these jurors. (See *People v. Higgins*, 27 Ill. App. 3d 266, 327 N.E.2d 135 (5th Dist. 1975).) Even if we were not able to find a waiver, there was no showing that the statement of the excused juror was prejudicial to defendant. As pointed out by the court and prosecution, the statement could have referred to a trial other than defendant's. Furthermore, the thorough examination of the jurors at the voir dire indicated that they would be fair and impartial. As there was no evidence that defendant did not consequently receive a fair trial, the trial court did not err in refusing to excuse these panel members.

■ Defendant next assigns as error the failure of the trial court to declare a mistrial after the wives of two of the jurors had been contacted by an undisclosed woman to urge their husbands to find defendant guilty as charged. The rule is well established that when an unauthorized communication between a juror and a third party is the basis for a motion of mistrial, the defendant must show that he was prejudiced in some way. (*People v. Peters*, 33 Ill. App. 3d 284, 337 N.E.2d 716 (1st Dist. 1975);

*People v. Hering,* 23 Ill. App. 3d 507, 318 N.E.2d 757 (4th Dist. 1974); *People v. D'Argento,* 106 Ill. App. 2d 36, 245 N.E.2d 501 (1st Dist. 1969).) In addition, it is clear that the trial court has broad discretion in determining whether to declare a mistrial. *(People v. Peters.)* In the instant case, there is no indication that defendant was prejudiced by the telephone calls. As previously stated, the fact that the two jurors on their own initiative immediately informed the court and the respective counsels of the communication would indicate that the jurors were not intimidated and were aware of their responsibility to be fair and impartial.

■■ ■ Defendant next argues that the extensive delay between the first and second trials deprived him of the constitutional right to a speedy trial. Defendant waived this right when he neglected to present the issue of undue delay to the trial court. *(People v. Worley,* 45 Ill. 2d 96, 256 N.E.2d 751 (1970).) In any event, it is beyond question that the period of time during which a convicted defendant pursues an appeal which results in a new trial has no bearing on whether a defendant received a speedy trial under the United States and Illinois constitutions.

■■ Defendant last argues that the sworn testimony of unavailable witnesses obtained at defendant's initial trial was inadmissible at the second trial. The law is settled that the testimony of a witness at a prior trial is admissible into evidence at a retrial of the same cause where, as here, the witnesses were unavailable to testify through no fault of the state and subject to competent cross-examination at the prior proceeding. See *People v. Jackson,* 41 Ill. 2d 102, 242 N.E.2d 160 (1968); *People v. Burton,* 6 Ill. App. 3d 879, 286 N.E.2d 792 (1st Dist. 1972), *cert. denied,* 411 U.S. 937, 36 L. Ed. 2d 399, 93 S. Ct. 1917 (1973).

For the reasons stated, the judgment of conviction of the Circuit Court of Christian County is affirmed.

Affirmed.

JONES and KUNCE, JJ., concur.